## E. M. Sperbeck v. The People of the State of Illinois.

### Gen. No. 13,762.

FALSE PRETENSES—*when conviction for obtaining money under, cannot be sustained.* The information in this case is construed and the proof held not to sustain a conviction of obtaining money under false pretenses.

Prosecution for obtaining money under false pretenses. Writ of error to the Municipal Court of Chicago; the Hon. FRED L. FAKE, JR., Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Reversed and remanded. Opinion filed March 6, 1908.

Sperbeck v. The People.

Statement by the Court. To an information filed in the Municipal Court by Albert Schetter, averring that the plaintiff in error, "did unlawfully and falsely represent and *pretend* Albert Schetter that he would give him employment as a machinist in the Union Pacific Railroad shops on payment of ten ($10) dollars he also further stated that he as an employment agent was authorized by the said railroad to hire men.

"And so affiant, relying on the said fake statement and being deceived thereby, was induced by reason thereof to pay over and deliver to the said E. M. Sperbeck the sum of ten ($10) dollars in lawful money of the United States of America, the said E. M. Sperbeck well knowing the said false representations to be false, with intent then and there to cheat and defraud," etc.

The defendant pleaded not guilty. A jury was waived and the trial by the court resulted in a finding of guilty and a judgment that defendant pay a fine of $250, and be imprisoned in the county jail one day, to reverse which judgment this writ of error is prosecuted. As to the representations made by the defendant to the prosecutor, the only evidence was the testimony of the prosecutor for the People, and the testimony of the defendant in his own behalf. The prosecutor testified in chief as follows:

"I know E. M. Sperbeck and have known him since about December 16 or 17, 1906. He runs an employment agency. I went into his office looking for work. I asked him whether he could give me work as a machinist in the railroad shops. He told me that upon the payment of one dollar ($1) down and the further payment of nine dollars ($9), which he claimed was for the tickets, he would give me employment at two dollars ($2) per day at Cheyenne or Granger, Wyoming. He said that he had given employment to a lot of fellows and that if I stayed there sixty days they would pay me back the ten dollars ($10) that I paid in. I did not believe that I would get that money back, but I was out of work and thought it was a pretty good thing. He told me that there were four others besides

7

myself going, but when we got to the depot there were only two others. He said the others had backed out, and that we were to go on and a man would meet us at Council Bluffs upon our arrival and give us transportation beyond."

On his cross-examination he testified in answer to questions, as follows:

"Q. What conversation did you have with Mr. Sperbeck regarding the arrangement for transportation, and what did he tell you that he would charge you for securing employment from him?

A. He told me that I would have to pay him one dollar for his services, the balance, namely, nine dollars would go to the railroad company for fare.

Q. What representations did Mr. Sperbeck make to you with reference to employment after you got out there?

A. He told me that he could place me either in Cheyenne, Wyoming, or Granger, Wyoming, at two dollars per day. That he had sent a lot of people out there and that there would be no trouble at all."

The defendant testified as follows:

"I first met Albert Schetter, the complaining witness, about December 16, or 17, 1906, when he came into my office and stated that he was looking for railroad work out west. I told him that I had secured employment for a number of men, and that I thought that I could get work for him on the Union Pacific Railroad. I went over and saw Mr. Williams, the general ticket agent, and asked him whether they could use some laborers. He told me that he would wire their manager and let me know. He afterwards told me that he could place the men and I told Mr. Schetter that I could get him employment at two dollars per day on the Wyoming division of the Union Pacific Railroad.

Q. Did you state to him that you could give him employment at Cheyenne or Granger? A. No, sir, I did not. I told him that they needed men on the Wyoming division and that he could perhaps be placed or secure employment at any of the points along said line."

Sperbeck v. The People.

FRED A. BANGS, for plaintiff in error.

JOHN J. HEALY, State's Attorney, and CLIFFORD G. ROE, for defendant in error.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

The statute on which the charge in this case is based provides that: "Whoever, with intent to cheat or defraud another, designedly by color of any false token or writing, or by any false pretense, obtains the signature of any person to any written instrument or obtains from any person any money, personal property or other valuable thing, shall be fined in any sum not exceeding $2,000 and imprisoned not exceeding one year, and shall be sentenced to restore the property so fraudulently obtained, if it can be restored."

The information alleges that the defendant, "did unlawfully and falsely represent and pretend Albert Schetter that he would give him employment as a machinist in the Union Pacific Railroad shops, on payment of ten dollars; he also further stated that he as an employment agent was authorized by the said railroad to hire men. And so affiant relying on the said fake statement and being deceived thereby was induced, etc., to pay over, etc." This is an averment that the defendant made two distinct statements or representations to the prosecutor: the first that he would give the prosecutor, "employment as a machinist in the Union Pacific Railroad shops on the payment of ten dollars"; the second, that "he, as an employment agent was authorized by the said railroad to hire men." The word "falsely" in the averment applies to the first statement only, and not to the second. If it had been intended to make the word "falsely" apply to both statements, at the conclusion of the first statement after the word dollars, the word "and" would have been used instead of the words "he also stated." This view finds confirmation in the language of the next clause of the information: "And so affiant relying upon the said *fake* statement and being deceived thereby, etc."

Theives' slang has no proper place in an information, but whatever may be the meaning of the slang word "fake" as used in the information, the word statement is singular, and but one statement is by the information styled a "fake statement."

To establish the guilt of the defendant, the evidence must prove beyond a reasonable doubt that the defendant represented or pretended to the prosecutor: "that he would give him employment as a machinist in the Union Pacific shops."

We should hesitate to hold that the testimony of the prosecutor, in chief, if it stood alone, was sufficient to sustain the allegation of the information. He testified that he asked defendant, "whether he could give me employment as a machinist in the railroad shops," and that defendant said that upon certain conditions, "he would give me employment at two dollars per day at Cheyenne or Granger, Wyoming." It is, to say the least, doubtful whether the statement, that the prosecutor testified that the defendant made, could in any event be held a statement or representation by the defendant that he would give the prosecutor employment as a machinist, or anything more than a statement or representation that he would give him employment at a certain place, at certain wages, without specifying any particular employment.

But the prosecution was bound to prove not only a representation by the defendant that he would give the prosecutor employment as a machinist, but that he would give him such employment, "in the Union Pacific Railroad shops." Neither in his testimony in chief nor in his cross examination did the prosecutor testify that the name of the Union Pacific Railroad Company was so much as mentioned in any conversation between him and the defendant. On his cross-examination he testified as follows:

"Q. What representations did Mr. Sperbeck make to you?

A. He told me he was hiring a lot of people to go out west and work on railroads.   *   *   *

Q. What representations did Mr. Sperbeck make to you with reference to employment after you got out there?   A.

He told me that he could place me either in Cheyenne or Granger, Wyoming, at two dollars per day, that he had sent a lot of people out there and there would be no trouble at all."

This testimony, taken in connection with his testimony in chief, clearly fails to sustain the allegation that defendant represented to the prosecutor, "that he would give him employment as a machinist in the Union Pacific Railroad shops."

The defendant testified that he did not state to the prosecutor that he could give him employment at Cheyenne or Granger, but independent of this testimony and considering only the testimony of the prosecutor, the evidence does not sustain the information, and the judgment must therefore be reversed and the cause remanded.

*Reversed and remanded.*